*497 The opinion of the Court was delivered by
Gibson J.
There is no doubt that Tilford was the agent of all the parties interested, for the purpose of receiving the money due on the contract; but, whether he had authority to sell the claim, and by that means deprive Morrison, Taylor £s? Co. of their right to revoke his authority, at any time before the money should be actually paid by the defendant, is a question not directly involved, and we will not, therefore, decide which. We are to enquire, whether the defendant has, by an express promise, engaged to pay the debt of the United States. Of the law on the subject, there is no doubt; A public agent treating for the government, but neither asking nor receiving credit for himself, is altogether irresponsible on any contract he may make in that capacity ; and where-ever his promise, or engagement, is connected with a subject fairly within the scope of his authority, it shall be intended to have been made officially and in his public character, uw» less the contrary distinctly and expressly appear. Were it otherwise, no man would be so imprudent as to accept an office with which individuals might have pecuniary transactions, for he could not perform its duties, without an absolute certainty of being ruined. Then, the policy of the law being, in all cases of doubt, to protect the officer, there can be no recovery against him, except on the most clear and satisfactory evidence of an absolute and unqualified engagement to be personally answerable. But, the policy of official protection aside, the rule is the same between private individuals, in every case of a promise by one to pay the debt of another. In England, and I believe, in most of our sister States, every promise of this sort is, unless it be reduced to writing, made void by statute. With us there is, unfortunately, no such statute; but the policy which gave rise to it elsewhere, so far operates here, that no recovery is permitted, where an absolute promise is not made out by clear and indisputable evidence. In the case before us, the whole evidence of a promise of any kind is contained in the deposition of Tilford. Previous to the period when he negotiated the draught to the plaintiff, he had, several times, called on the defendant, and been told, that the claim would be satisfied as soon as the latter should receive a remittance of treasury notes from Government, which was momentarily *498 expected. On this, he proposed to sell to the plaintiff a draught on the defendant for the amount of the claim ; but before the arrangement was completed, the parties called at the office of the defendant, and presented the draught to Banger, his clerk. The defendant was in the back room, and the witness says the draught was taken to him by some one present, or that he was consulted about it, and thati‘ payment was promised ’’ and the draft put on file in the office. This js the whole of the evidence about the promise. Now beside that it is very uncertain, on this statement, whether the promise was made by the defendant or Banger, it is clear this was an official transaction, conducted throughout, as Tilford elsewhere swears, in the usual course of the defendant’s business, and the intendment of law therefore is, that the promise, if made by the defendant, was in his official character. If it were made by Banger, he could not bind the defendant either in an official or an unofficial transaction; and it is just as probable it was made by him, as by the defendant ; for Banger seems to have been the person chiefly consulted by the parties, and there is no decisive evidence of any one else having answered their enquiries. On this head the evidence is altogether uncertain and unsatisfactory. But what clearly shews that no personal responsibility was contemplated, is the refusal to accept the draft; Banger stating that their usual way of transacting business, was not to accept in such cases, and with that the parties were satisfied. Would they have been so, if this had not been a common office transaction in the usual course, or would they have gone away without some memorandum, or other kind of evidence to explain it, and secure the defendant’s personal guaranty? Beside too, the improbability that the defendant would, without any compensation for the risk, become personally responsible, for the sake of persons with whom he appears to have had no connection, and but little acquaintance, is monstrous. But it is unnecessary to consider the strong negative tendency of the evidence ; for it is altogether deficient in extent. It is not sufficient, to prove that the defendant merely promised payment; for that, in the course of an official transaction, can be referred only to payment in a course of official duty; but it is necessary to go so far, as to shew, that, for a good consi4eration, he entered into an .absolute *499 and unqualified engagement to pay at all events, and out of his own pocket, if the public funds should fail him. But here there was no promise implying an engagement. W.hat is called the promise of the defendant was merely gratuitous, and in answer to enquiries as. to the value of Tilford,s demand. To enquiries of this kind, an officer is not bound to reply; but if he answer with good faith, he will not be responsible for the accuracy of the information he communicates, though for fraud he may be answerable in damages. Here, the evidence entirely fell short; and to leave the matter to the jury as a question of fact, without instructing them that by intendment of law, a promise in the course of an official transaction creates no personal liability unless that is expressly stipulated for, would be, perhaps, putting the cause in a point of view too favourable to the plaintiff. It was not á matter doubtful as to the evidence, but there was in truth, not sufficient evidence on which a verdict against the defendant could be founded.
A direct promise is therefore necessary to sustain an action against an officer. But Tilford having given a receipt for the amount, on which as a voucher the defendant received the money, it was, it is contended, received specifically as payment by the Government into the defendant’s hands, for the plaintiff’s use. But although funds were put into the defendant’s hands, and by him invested in the stocks, for the ultimate payment of this claim, when the persons entitled to the money should be ascertained, there is no pretence to say those funds were specifically appropriated by Government to the payment of any one in particular. The defendant was not an agent to receive payment for the plaintiff, and although funds were provided, payment by the Government remains yet to be made. There are, undoubtedly, cases in the books of assumpsit, for money had and received by regimental agents ; but it will be found, that in each, the defendant was the agent of the plaintiff, as well as of the government. Here the United States have not parted with the controul over the fund.
But it is argued, the defendant is to be considered as a mere stakeholder; the contest being between the individuals who contracted with the United States ; and, that as substantial justice has been done between them, the Court ought *500 not to interfere with the verdict, because it may only be against some rule of law. Without unnecessarily entering into the merits of the disputes between those contractors, or saying any thing to the prejudice of any party in the suit depending directly between them, I may remark, that it is far from being clear, that injustice has not been done, or that the plaintiff has, under the transfer of the claim by Tilford, acquired any right at all. But as regards the defendant, injustice has certainly been done, which can be repaired, only by another trial: for it is not here, that he stands in all respects as a stakeholder, indifferent as to the event. The authority of the plaintiff to receive the amount due, is, to him, a matter of essential importance ; for though payment to the plaintiff on a void authority would not render the defendant liable to Morrison, Taylor Co.'in an action, still, as we must intend that Government will always do justice, the presumption is, that that firm would eventually receive whatever is due to it; and in the event of its being successful, the defendant would, in the settlement of his accounts, be held answerable for a misapplication of the money. It is said, however, that the individual claims of the parties, having been litigated and respectively decided on in this suit, would, doubtless, be a sufficient inducement for Government to refuse its interference in behalf of any one dissatisfied with the verdict. But for this, although it be highly probable, the defendant can have no pledge. In every point of view, then we are bound to award a new trial.
New trial granted.